1  Renée Welze Livingston (SBN 124280)
   Jason G. Gong (SBN 181298)
2  LIVINGSTON LAW FIRM
   A Professional Corporation
3  1600 South Main Street, Suite 280
   Walnut Creek, CA  94596
4  Tel:  (925) 952-9880
   Fax: (925) 952-9881
5
   Attorneys for Cross-Defendant
6  FEDERAL DEPOSIT INSURANCE
   CORPORATION as Receiver for
7  Washington Mutual Bank

8
9              IN THE UNITED STATES DISTRICT COURT

10             FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12 CEP EMERY TECH INVESTORS, LLC,  )  Case No.  09-04409 SBA
                                   )
13            Plaintiff,           )  [PROPOSED] ORDER GRANTING
                                   )  FEDERAL DEPOSIT INSURANCE
14     vs.                         )  CORPORATION'S (AS RECEIVER FOR
                                   )  WASHINGTON MUTUAL BANK) MOTION
15 JPMORGAN CHASE BANK, N.A.,      )  TO INTERVENE
                                   )
16            Defendants.          )
                                   )
17 JPMORGAN CHASE BANK, N.A.,      )
                                   )
18            Cross-Complainant,   )
                                   )
19     vs.                         )
                                   )
20 FEDERAL DEPOSIT INSURANCE       )
   CORPORATION AS RECEIVER FOR     )
21 WASHINGTON MUTUAL BANK          )
                                   )
22            Cross-Defendant.     )
                                   )
23
24         This matter is before the Court on Cross-Defendant Federal Deposit Insurance

25 Corporation's (as Receiver for Washington Mutual Bank) (hereinafter "FDIC" or "Applicant")

26 Motion to Intervene (as a Defendant) Pursuant to Fed. R. Civ. P. Rule 24(a)(2) or in the

27 Alternative, Fed. R. Civ. P. Rule 24(b)(2), Plaintiff's CEP Emery Tech Investors LLC's

28 ("Emerytech") Opposition, Applicant's Reply, and JPMorgan Chase Bank, N.A.'s ("Chase")

---

Statement of Non-Opposition. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS FDIC's Motion to Intervene. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

## I.     BACKGROUND

The present dispute between Emerytech and Chase arises from a commercial lease originating between Emerytech and Washington Mutual Bank ("WaMu"). Emerytech seeks damages against Chase exceeding $4,100,000, including unspecified late charges and interest due under the WaMu lease and attorney's fees and costs on the theory that Chase assumed the lease when it purchased certain bank assets pursuant to a Purchase and Assumption Agreement (P&A Agreement) with the FDIC.

On or about August 26, 2002, Emerytech (the landlord) and WaMu (the tenant) entered into a five-year written lease agreement involving approximately 35,000 square feet of office space of the EmeryTech Building in Emeryville, California. The lease between Emerytech and WaMu commenced on October 1, 2002 and was to run through July 20, 2007. On or about February 26, 2007, Emerytech and WaMu executed an amendment to the original lease that extended the lease for an additional five years through July 20, 2012.

On September 25, 2008, the Office of Thrift Supervision, an office within the United States Department of the Treasury, declared that WaMu was insolvent, placed the failed institution into receivership, and appointed the FDIC as Receiver for WaMu. Upon accepting the appointment, the FDIC assumed the assets and liabilities of WaMu, which included the subject lease between WaMu and Emerytech. On the same day, the FDIC entered into a P&A Agreement with Chase that provided for the sale, transfer, and control of certain WaMu assets and liabilities to Chase as the "Assuming Bank." Emerytech was not a party to this agreement between the FDIC and Chase. It is the FDIC and Chase's position that pursuant to the P&A Agreement, Chase had a 90-day option to assume the WaMu lease, but declined to exercise this option leaving liability for the lease with the FDIC as the successor for WaMu.

1   On April 5, 2009, the FDIC notified Emerytech that it was disaffirming the lease pursuant
2   to 12 U.S.C. Section 1821(e) of the Financial Institutions Reform, Recovery and Enforcement
3   Act of 1989 ("FIRREA").  If valid, disaffirmance of the subject lease would render it
4   unenforceable against the FDIC.  Pursuant to Section 1821(e)(4) of FIRREA, the disaffirmance
5   would also limit the scope of potential damages against the FDIC to accrued rent up until either
6   the later of (1) the date the notice of disaffirmance was mailed, or (2) the effective repudiation
7   date.  *See id.*

8   On February 26, 2009, Emerytech filed an action against Chase in the Alameda County
9   Superior Court asserting claims for breach of contract and warranty.  On March 25, 2009,
10  Emerytech filed a First Amended Complaint ("FAC") against Chase asserting breach of the
11  underlying lease and seeking back rent and damages.  (Docket 1, Ex. 3.)  Among other things,
12  the FAC asserts that Chase assumed the WaMu lease as part of a general assumption of WaMu's
13  assets and liabilities pursuant to the P&A Agreement between the FDIC and Chase.

14  On August 19, 2009, Chase filed a third-party cross-complaint against the FDIC seeking
15  declaratory relief and indemnification.  (Docket 1, Ex. 5.)  On September 18, 2009, the FDIC
16  removed the state court action to this Court.  (Notice of Removal, Docket 1.)  On December 4,
17  2009, the FDIC filed the instant motion to intervene. The FDIC seeks to intervene as of right
18  pursuant to FRCP 24(a)(2) or, alternatively, pursuant to FRCP 24(b)(2) in the main action as a
19  defendant.  (Docket 14.)  On Feburary 8, 2010, Emerytech filed an opposition (Docket 29), and
20  defendant Chase filed a statement of non-opposition (Docket 30).  The FDIC filed its reply on
21  Feburary 16, 2010.  (Docket 31.)

22  **II.      LEGAL STANDARD**
23  **A.      Intervention as of Right**
24  Rule 24(a)(2) of the Federal Rules of Civil Procedure requires a district court to grant
25  intervention if "(1) the applicant's motion is timely; (2) the applicant has asserted an interest
26  relating to the property or transaction which is the subject of the action; (3) the applicant is so
27  situated that without intervention the disposition may, as a practical matter, impair or impede its
28  ability to protect that interest; and (4) the applicant's interest is not adequately represented by the

1  existing parties." *Portland Audubon Society v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989); *see also*
2  *United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990); *SEC v. Navin,* 166 F.R.D. 435, 439
3  (N.D. Cal. 1995).
4        The Ninth Circuit has held that district courts are to interpret the requirements of Rule
5  24(a)(2) broadly in favor of intervention. *See Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir.
6  2006); *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). To determine whether
7  intervention is appropriate, courts are guided primarily by practical and equitable considerations,
8  *see Donnelly*, 159 F.3d at 409, and are required to accept as true the non-conclusory allegations
9  made in support of intervention, *see Southwest Center for Biological Diversity v. Berg*, 268 F.3d
10  810, 819 (9th Cir. 2001).
11  **B.**  **Permissive Intervention**
12        Rule 24(b)(1) allows "anyone to intervene who: (A) is given a conditional right to
13  intervene by a federal statute; or (B) has a claim or defense that shares with the main action a
14  common question of law or fact." *See* Fed. R. Civ. P. 24 (b)(1)(A) and (B). An applicant
15  seeking to intervene under Rule 24(b)(1)(B) must also demonstrate that the motion is timely, that
16  the applicant's claim or defense and the main action have questions of law or fact in common,
17  and that the trial court has an independent basis for jurisdiction over the applicant's claims or
18  defenses. *See Donnelly*, 159 F.3d at 412; *Northwest Forest Resource Council v. Glickman*, 82
19  F.3d 825, 839 (9th Cir. 1996). Because a district court has broad discretion to grant relief under
20  Rule 24(b)(1)(B), a court may properly deny intervention even after an applicant satisfies the
21  threshold requirements under the statute. *See Donnelly*, 159 F.3d at 412. In exercising its
22  discretion, a district court must consider whether intervention "will unduly delay the main action
23  or will unfairly prejudice the existing parties." *See id.*; *see also* Fed. R. Civ. P. 24(b)(3).
24        **III.   DISCUSSION**
25  **A.**  **Intervention as of Right**
26        The Court finds that the FDIC is entitled to intervene as of right in this action because it
27  has established that it satisfies the requirements of Rule 24(a)(2). *See Prete*, 438 F.3d at 954
28  (stating that applicant bears burden to establish elements under Rule 24).

### 1.      The FDIC's Motion is Timely

To determine whether a motion to intervene is timely, courts consider the following three factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.  *See United States ex rel. McGough v. Covington Technologies*, 967 F.2d 1391, 1394-1396 (9th Cir. 1992); *see also United States v Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (stating that courts are to be lenient when determining whether a motion to intervene as a matter of right is timely).

Although significant delay can weigh against intervention, courts have held that a "mere lapse of time alone is not determinative."  *See Oregon*, 745 F.2d at 552.  Thus, to be timely, an applicant need not seek to intervene immediately.  *See Navin,* 166 F.R.D. at 439 (citing *NAACP v. New York*, 413 U.S. 345, 367 (1973)).  Instead, courts consider whether there have been actual proceedings of substance on the merits in the underlying action.  *See Northwest Forest Resources Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (concluding that motion was timely where it had been filed "before the district court had made any substantive rulings").

Here, the Court finds that the FDIC has demonstrated that its motion is timely.  First, this case is at an early stage in the proceedings and has not had any significant activity consisting of procedural, substantive, or discovery-related motions regarding the substantive issues presented in this action.  Thus, the Court has yet to consider the underlying merits of this case.  *See Glickman*, 82 F.3d at 837.  Second, the FDIC's intervention at this early stage of the proceedings will not prejudice the existing parties because there will be no need to reopen and to re-litigate any prior proceedings between the parties.  *Cf. League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) (concluding that parties would be prejudiced where intervenor waited 27 months before seeking to intervene when litigation was beginning to wind down).  Third, the FDIC has not significantly delayed its attempt to intervene in this action, particularly where there have been no proceedings regarding the merits of the issues presented in Emerytech's amended complaint.  *See Glickman*, 82 F.3d at 837 (stating that courts consider whether any substantive proceedings have occurred when determining the timeliness of a motion to intervene).

**2.     Protectable Interest in the Subject Matter of the Litigation**

An applicant filing a timely motion to intervene must also demonstrate that it has a significantly protectable interest in the subject matter of the underlying litigation. *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983); *see also Glickman*, 82 F.3d at 837. "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims." *Donnelly*, 159 F.3d at 409.

The "interest" test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980). An applicant satisfies the "relationship" requirement if resolution of plaintiff's claims will actually affect the applicant. *See Donnelly*, 159 F.3d at 410.

Here, the Court finds that the FDIC has a significant protectable interest in the subject matter of the action and that it has a substantial interest in discharging its statutory duty under Section 1821(d) of FIRREA. *See Sahni v. American Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996) (discussing broad scope of FDIC's authority under FIRREA to dispose of receivership assets and to deal with distressed institutions). In addition, resolution of Emerytech's claims will affect the FDIC because Emerytech's claims, if successful, will effectively unwind the FDIC-Receiver's contract with Chase and abrogate the FDIC's statutorily conferred authority to disaffirm the WaMu lease. Accordingly, the Court concludes that the FDIC has met its burden to establish a protectable interest in the action.

**3.     Disposition of this Action May Adversely Impair the FDIC's Interests**

To meet the impairment element under Rule 24(a)(2), an applicant need only demonstrate that disposition of the lawsuit may adversely affect the applicant's interest if intervention is not granted. *See United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). In addition, the Advisory Committee Notes of Rule 24 provide that "if an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule,

1  be entitled to intervene." *See Berg*, 268 F.3d at 822 (quoting Advisory Committee Notes for
2  Rule 24).
3    Here, the Court finds the relief sought by Emerytech may adversely affect the FDIC's
4  interests, because if Emerytech's action to enforce the subject lease against Chase prevails, it
5  could effectively (1) abrogate the FDIC's disaffirmance of the subject lease; and (2) unwind the
6  P&A Agreement between the FDIC and Chase.  In addition, disposition of this action may
7  impair the FDIC's ability to dispose of receivership assets in an expeditious and efficient manner
8  as required by FIRREA.  *See Sahni*, 83 F.3d at 1057-58.  Accordingly, the Court finds that the
9  FDIC has met its burden to demonstrate that disposition of the main action may adversely impair
10 its interests.

11   **4.**  **The FDIC's Interests May Not Adequately be Represented by Chase**

12   Whether an applicant's interests will be adequately represented by an existing party
13 depends on whether (1) the interest of a present party is such that it will undoubtedly make all
14 the intervenor's arguments; (2) the present party is capable and willing to make such arguments;
15 and (3) the party seeking to intervene would offer any necessary elements to the proceedings that
16 other parties would neglect.  *See Berg*, 268 F.3d at 822.
17   Although the applicant bears the burden of demonstrating that the existing parties may
18 not adequately represent its interests, *see Sagebrush Rebellion, Inc.*, 713 F.2d at 528, the burden
19 of showing inadequacy is minimal, meaning that the applicant need only show that
20 representation of its interests by existing parties <u>may be</u> inadequate.  *See Berg*, 268 F.3d at 822-
21 23 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).
22   Here, the Court finds that the FDIC's interests may not be adequately represented by
23 Chase, because Chase's interests in this action might be more narrow than the FDIC's interests.
24 Specifically, Chase seeks a determination that it did not assume the subject lease to negate
25 Emerytech's breach of contract claim.  In contrast, the FDIC has a broader interest in discharging
26 its statutory duty under FIRREA by disposing of receivership assets in a timely and efficient
27 manner and ensuring that P&A Agreements with successor banks are enforceable.  These
28 interests might not be represented by Chase in the main action.  Accordingly, the Court

concludes that the FDIC has met its minimal burden of establishing that Chase may inadequately represent its interests in defending against Emerytech's claims.

For the reasons discussed above, the Court concludes the FDIC has met its burden to intervene as of right in the main action. Accordingly, the Court hereby GRANTS the FDIC’s motion to intervene pursuant to Rule 24(a)(2).

**B. Permissive Intervention**

In addition to seeking to intervene as of right, the FDIC in the alternative seeks to intervene pursuant to Rule 24(b)(1)(B). An applicant seeking permissive intervention has the burden of establishing that (1) the motion is timely; (2) the trial court has an independent basis for jurisdiction; and (3) the applicant’s claims or defenses and the main action have a question of law or fact in common. *See Donnelly*, 159 F.3d at 412; *Glickman*, 82 F.3d at 839.

The Court finds the FDIC has met its burden for permissive intervention.

First, as discussed above, the FDIC’s motion to intervene is timely and demonstrates that it shares common issues of law and fact with the main action relating to matters such as, *inter alia*, (1) the scope and meaning of the P&A Agreement between the FDIC and Chase, (2) whether Chase assumed the WaMu lease, and (3) whether the FDIC properly disaffirmed the lease. Second, the Court has an independent basis for jurisdiction under FIRREA to adjudicate the FDIC’s claims and/or defenses. *See* 12 U.S.C. Section 1819(b)(2)(A) (providing that any civil suit in which the FDIC, in any capacity, is a party is “deemed to arise under the laws of the United States”). Third, the Court finds that allowing the FDIC to intervene will not cause undue delay or prejudice to the existing parties, but will promote the interest of judicial economy. *See Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989). Moreover, the Court further finds that intervention will significantly contribute to the full development of factual issues and to the fair adjudication of the legal issues presented in this action, *see Spangler v. Pasadena Board of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977), and will promote the interest of judicial economy, *see Venegas*, 867 F.2d at 531.

For the foregoing reasons, the Court concludes the FDIC has established the elements for permissive intervention pursuant to Rule 24(b)(1)(B). Accordingly, the Court notes that if the

1  FDIC had not brought a motion to intervene as of right, the Court would grant the FDIC's
2  motion to intervene pursuant to Rule 24(b)(1)(B).

3                                    **IV.    CONCLUSION**

4        For the foregoing reasons,

5        IT IS HEREBY ORDERED THAT:

6        (1)    The FDIC's motion to intervene pursuant to FRCP 24(a)(2) is GRANTED;

7        (2)    The FDIC's motion to intervene pursuant to FRCP 24(b)(2) is DENIED AS
8   MOOT;

9        (3)    The FDIC shall file its Answer within (5) days of the date of this order;

10       (4)    The Case Management Conference currently scheduled for April 13, 2010, shall
11  be CONTINUED to **May 26, 2010, at 3:15 p.m.**  The parties shall **meet and confer** prior
12  to the conference and shall prepare a joint Case Management Conference Statement which
13  shall be filed no later than ten (10) days prior to the Case Management Conference that
14  complies with the Standing Order For All Judges Of The Northern District Of California
15  and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement
16  as well as for arranging the conference call.  All parties shall be on the line and shall call
17  (510) 637-3559 at the above indicated date and time.

18        IT IS SO ORDERED.

19
20  Dated: April 12, 2010                          _____
                                                   SAUNDRA BROWN ARMSTRONG
21                                                 United States District Judge