1

2                        UNITED STATES DISTRICT COURT

3               FOR THE NORTHERN DISTRICT OF CALIFORNIA

4                                OAKLAND DIVISION

5

6   CEP EMERY TECH INVESTORS LLC,              Case No:  C 09-4409 SBA

7            Plaintiff,

8        vs.                                   **ORDER GRANTING PLAINTIFF'S MOTION TO VACATE ORDER OF DISMISSAL AND REINSTATE ACTION**

9   JP MORGAN CHASE BANK, N.A., and
    FEDERAL DEPOSIT INSURANCE
10  CORPORATION AS RECEIVER FOR                Dkt. 53
    WASHINGTON MUTUAL BANK,

11
             Defendants.
12

13       Plaintiff brings this breach of contract action against Defendants.  The parties are

14  presently before the Court on Plaintiff's Motion to Vacate Order of Dismissal and Reinstate

15  Action.  Dkt. 53.  Having read and considered the papers filed in connection with this matter

16  and being fully informed, the Court hereby GRANTS the motion for the reasons set forth

17  below.  The Court, in its discretion, finds this matter suitable for resolution without oral

18  argument.  See Fed.R.Civ.P. 78(b).

19  I.      **BACKGROUND**

20          A.      **PROCEDURAL HISTORY**

21       On February 26, 2009, Plaintiff CEP Emery Tech Investors LLC ("Plaintiff" or "CEP")

22  filed this breach of contract action against Defendant JP Morgan Chase Bank, N.A. ("JPMC")

23  in the Superior Court of California, County of Alameda.  See Notice of Removal, Dkt. 1.

24  Plaintiff's suit arises from JPMC's alleged breach of a lease agreement between Plaintiff and

25  Washington Mutual Bank ("WaMu").  Id., Ex. C ¶ 5.  According to Plaintiff, JPMC assumed

26  the lease agreement from WaMu by virtue of its purchase of WaMu's assets, and its

27  assumptions of WaMu's liability from Defendant Federal Deposit Insurance Corporation

28  ("FDIC").  Id. ¶ 6.  Plaintiff contends that after assuming the lease agreement and occupying

the leased premises, JPMC breached the lease by tendering only a partial payment of rent due. Id. ¶ 25.  FDIC removed this action on September 18, 2009 based on federal subject matter jurisdiction.  Notice of Removal ¶¶ 9, 10.

On September 20, 2010, the Court issued an Order to Show Case Re Dismissal ("OSC"), on the ground that Plaintiff failed to meet and confer with Defendants in advance of the scheduled September 16, 2010 Case Management Conference, failed to file a Joint Case Management Conference Statement, and failed to set up the call for the Case Management Conference, all in violation of the Court's scheduling order.  Dkt. 50.  The OSC directed the parties to file a written response within seven days, and advised them that failure to comply with the OSC would be deemed sufficient grounds to dismiss the action without further notice. Id.  Plaintiff failed to respond to the OSC.  Therefore, on September 30, 2010, the Court issued an order dismissing this action under Federal Rule of Civil Procedure 41(b) for lack of prosecution.  Dkt. 52.

On December 22, 2010, Plaintiff filed the instant motion to set aside the dismissal under Federal Rule of Civil Procedure 60(b)(1).  Plaintiff asserts that its failure to prosecute this action was caused by excusable neglect due to the "severe illness and total incapacity of counsel [Michael A. Gevertz] to perform his duties as plaintiff's counsel."  Dkt. 53 at 1-2. Defendants oppose Plaintiff's motion.

### B.    FACTUAL BACKGROUND

In support of its motion, Plaintiff submits the declaration of its current counsel, Phillip R. Soderquist, the owner of Soderquist Law Offices.  Soderquist Decl., Dkt. 53-2.  Mr. Soderquist explains that Plaintiff's former counsel of record, Mr. Gevertz, was associated into Soderquist Law Offices as Of Counsel and rented an office in their suite.  Id. ¶ 2.  Mr. Gevertz handled his own cases and clients, received his owner retainer fees, and performed his own billing.  Id.  According to Mr. Soderquist,  "Mr. Gevertz is a seasoned trial attorney with extensive federal practice experience."  Id.  In June 2010, Mr. Soderquist learned that this

1  action had been brought into the office by Mr. Gevertz through associate Eleanor Roman.  Id.

2  Ms. Roman left to join another firm in June 2010. [1]  Id.

3      In September 2010, Mr. Gevertz stopped appearing in his office.  Id. ¶ 3.  It was Mr.

4  Soderquist's understanding that Mr. Gevertz was planning to continue practicing from his

5  home office, or would eventually be moving to another firm.  Id.  In October 2010, Mr.

6  Gevertz stopped returning Mr. Soderquist's telephone calls.  Id. ¶ 4.  Mr. Soderquist spoke with

7  Mr. Gevertz's wife, Kathleen Gevertz, from whom Mr. Soderquist learned that Mr. Gevertz

8  was being treated for depression.  Id.  Mr. Soderquist "was told that all his cases had settled, or

9  resolved, except for the instant action on which he was still working."  Id.  It was Mr.

10  Soderquist's understanding that Mr. Gevertz would continue to represent the client in this case

11  in the future.  Id.  Mr. Soderquist "inquired of Ms. Gevertz of the status of the case in October

12  and November, and was told that Mr. Gevertz was still handing the matter."  Id.  Therefore,

13  Mr. Soderquist "was not concerned about this case, believing it was being properly handled by

14  Mr. Gevertz."  Id.

15      On December 13, 2010, Mr. Soderquist's secretary forwarded to him an email from

16  Kathy Wells of CEP requesting the status of the instant action.  Id. ¶ 5.  Mr. Soderquist

17  thereafter emailed and called Mr. Gevertz but received no response.  Id.  Mr. Soderquist asked

18  attorney Robert Schwartz of his office to determine the status of the case.  Id.  On December

19  15, 2010, Mr. Soderquist "first learned that this case had been dismissed by the Court on

20  September 30, 2010, after Mr. Schwartz was able to access the online Court documents, and

21  [Mr. Soderquist] reviewed the online documents for the first time."  Id. ¶ 6.  Mr. Soderquist

22  explains that all communications from the Court and opposing counsel in this case were

23  received by Mr. Gevertz at his personal yahoo.com  email address.  Id. ¶ 9.  No one in Mr.

24  Soderquist's office has access to that email account.  Id.  Mr. Soderquist states that "at no time

25  did [he] receive any email communications or any other type of communications, pleadings or

26  

27      [1] Plaintiff's initial counsel in this action was Frank T. Pepler of Pepler Mastromonaco
LLP.  On April 5, 2010, Plaintiff filed a Substitution of Counsel indicating that Mr. Gevertz

28  was now counsel of record in place of Mr. Pepler.  See Dkt. 35.

1  any documents from opposing counsel or the Court during the pendency of this matter."  Id.

2  Mr. Soderquist further states that, prior to December 15, 2010, when he first reviewed the

3  Court's orders online, those orders were not part of any file in his office.  Id.

4  　　　　Furthermore, Mr. Soderquist explains that, while he understood Mr. Gevertz was

5  depressed, he did not realize the seriousness of his medical condition until December 15, 2010,

6  and "specifically, that Mr. Gevertz was so mentally incapacitated that he would abandon his

7  client and not respond to the Court's orders."  Id.  Mr. Soderquist states that "immediately after

8  learning of the dismissal, [he] contacted the Court's clerk and advised that plaintiff would be

9  filing a motion to set aside the dismissal if opposing counsel refused to so stipulate."  Id. ¶ 11.

10  Plaintiff thereafter filed the instant motion on December 22, 2010.  Dkt. 53.

11  　　　　In addition, Plaintiff submits the declaration of Dr. Frank S. Ranuska, Mr. Gevertz's

12  neurologist, who states that Mr. Gevertz has been under his care since January 2006.  Ranuska

13  Decl. ¶ 2, Dkt. 60.  Dr. Ranuska "certif[ies] that [Mr. Gevertz] has been temporarily totally

14  disabled from his job continuously since August 30, 2010."  Id.  Dr. Ranuska states that Mr.

15  Gevertz "remains disabled from working at this time, with an estimated return to work date of

16  May 2011."  Id.  Lastly, Plaintiff submits the declaration of Mr. Gevertz's wife, Kathleen

17  Gevertz, in which she states: "In September 2010 my husband Michael became extremely

18  depressed and was not longer able to work.  He has not been able to return to work since that

19  time."  Gevertz Decl. ¶ 2, Dkt. 53-3.  Ms. Gevertz explains that in "October and November

20  [she] received emails and calls from Philip Soderquist stating that he was unable to reach

21  Michael and inquiring as to the status of the Emery Tech case."  She further explains that "after

22  speaking with [her] husband [she] reported to Mr. Soderquist that [she] understood that there

23  was nothing further that needed to be done on the case."  Id. ¶ 3.  Also, she states that on

24  December 21, 2010 she first learned from Mr. Soderquist that the case had been dismissed.  Id.

25  ¶ 4.

26  **II.**　　**LEGAL STANDARD**

27  　　　　Rule 60(b)(1) allows a party to seek relief from a final judgment, order, or proceeding

28  based on "mistake, inadvertence, surprise, or excusable neglect."  "Rule 60(b) is 'remedial in

1   nature and … must be liberally applied.'" TCI Group Life Ins. Plan v. Knoebber, 244 F.3d

2   691, 695-696 (9th Cir. 2001) (quoting Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)).  The

3   Ninth Circuit has emphasized that "where there has been no merits decision, appropriate

4   exercise of district court discretion under Rule 60(b) requires that the finality interest should

5   give way fairly readily, to further the competing interest in reaching the merits of a dispute."

6   Id. at 696.

7          The excusable neglect standard "takes account of factors such as prejudice, the length of

8   the delay and impact on judicial proceedings, the reason for the delay, including whether it was

9   within the reasonable control of the movant, and whether the movant acted in good faith." Id.

10  (quotations omitted).  Where the moving party "seeks timely relief from the judgment and has

11  a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the

12  judgment." Meadows v. Dominican Republic, 817 F.2d 517, 521 (9th Cir. 1987).

13  **III.   ANALYSIS**

14         **A.    PREJUDICE**

15         To be prejudicial, the setting aside of a judgment or order "must result in greater harm

16  than simply delaying resolution of the case." TCI Group Life Ins. Plan, 244 F.3d at 701.

17  Rather, "to be considered prejudicial, the delay must result in tangible harm such as loss of

18  evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." Id.

19  (quotations omitted).

20         Here, Plaintiff asserts that it is "unaware of any loss of evidence, increased difficulties

21  of discovery, or opportunity for fraud or collusion resulting from the three month delay in this

22  action." Pl.'s Mtn. at 5.  In response, Defendants fail to identify any prejudice they might

23  suffer from vacating the order of dismissal.  Therefore, this factor weighs in favor of granting

24  Plaintiff's motion.

25         **B.    LENGTH OF DELAY**

26         The Court dismissed this action on September 30, 2010.  Plaintiff filed the instant

27  motion on December 22, 2010, approximately three months later.  There is no indication that

28  this delay is significant, particularly in view of the representation of Plaintiff's current counsel

1   that he did not become aware of the dismissal until December 15, 2010.  Given this relatively

2   short delay, and the fact that Defendants offer no argument to the contrary, this factor also

3   weighs in favor of granting Plaintiff's motion.

4        C.     REASON FOR DELAY/GOOD FAITH

5        Plaintiff asserts that its failure to prosecute this action was caused by excusable neglect

6   due to the severe illness and "total incapacity" of its counsel.  Defendants present two

7   arguments in response.  First, Defendants argue that Ninth Circuit precedent establishes that a

8   client is generally chargeable with its counsel's negligent acts, citing Link v. Wabash Railroad

9   Co., 370 U.S. 626 (1962) and Casey v. Albertson's, Inc., 362 F.3d 1254 (9th Cir. 2004).  While

10  this may be accurate as a general proposition, the Ninth Circuit has also recognized that "[t]he

11  defendant's or counsel's physical or mental illness is a common ground for finding conduct

12  non-culpable" when considering a Rule 60(b)(1) motion.  TCI Group Life Ins. Plan, 244 F.3d

13  at 698 (citing Leshore v. County of Worcester, 945 F.2d 471 (1st Cir. 1991); Vac-Air, Inc. v.

14  John Mohr & Sons, Inc., 471 F.2d 231 (7th Cir. 1973); Rooks v. American Brass Co., 263 F.2d

15  166 (6th Cir. 1959)).

16       Moreover, the cases Defendants rely upon in support of their argument are

17  distinguishable because, among other reasons, they did not involve attorney illness or

18  incapacity.  In Link, the Supreme Court upheld a dismissal under Rule 41(b) for failure to

19  prosecute based on counsel's failure to appear at a pre-trial conference.  There, the only excuse

20  provided was that counsel was busy preparing papers to submit to a state supreme court.  Link,

21  370 U.S. at 633.  Also, in Link, counsel had a history of dilatory conduct in the litigation.  Id.

22  The Court stated "there is nothing in the record to indicate that counsel's failure to attend the

23  pre-trial conference was other than deliberate or the product of neglect."  Id. at 636.  Such

24  circumstances are not present here.

25       In Casey, the Ninth Circuit upheld the denial of plaintiff's Rule 60(b)(1) motion on the

26  ground that excusable neglect was not shown.  Specifically, the Court rejected plaintiff's

27  argument "that her first attorney committed malpractice; that her second attorney was

28  inexperienced; and that her second and third attorneys did the best they could under the

1   circumstances" because, "as a general rule, parties are bound by the actions of their lawyers,

2   and alleged attorney malpractice does not usually provide a basis to set aside a judgment

3   pursuant to Rule 60(b)(1)." Casey, 362 F.3d at 1260.  Here, the circumstances surrounding

4   Plaintiff's excusable neglect assertion – namely, the incapacity of its counsel – go beyond those

5   presented in Casey.

6           Second, Defendants argue that Plaintiff fails to demonstrate that it was diligent in

7   monitoring the status of its lawsuit or that it is blameless for its failure to prosecute.  In

8   response, Plaintiff submits a reply declaration from Kathy Wells, Asset Manger of Ellis

9   Partners LLC, which manages Plaintiff through another entity, EPI Emery Tech Investors LLC.

10  Wells Decl., Dkt. 66.  In her declaration, Ms. Wells explains that she is responsible for

11  Plaintiff's interest in the lease agreement at issue.  Id. ¶ 2.  She also explains the steps that she

12  took to monitor this action from its inception, including corresponding and speaking with Mr.

13  Gevertz on multiple occasions from April 2010 (when Mr. Gevertz became counsel of record)

14  through August 2010 regarding the action.  Id. ¶ 6.  Ms. Wells explains: "Mr. Gevertz,

15  however, never informed me that the case had been dismissed.  In fact, even after the Court

16  issued its September 20, 2010, Order to Show Cause, Mr. Gevertz sent me a misleading email

17  leading me to believe that everything was fine with the case." Id. ¶ 3.  Moreover, she states

18  that "[u]ltimately, CEP hired separate counsel to investigate the status of the case" and "[i]t

19  was through CEP's separate counsel that we learned that the case had been dismissed." Id.

20  Based on the facts submitted, it is apparent that Plaintiff was, in fact, reasonably diligent in

21  monitoring this action.  Therefore, the reason for the delay and Plaintiff's good faith weigh in

22  favor of granting the instant motion.[2]

23

24          [2] In their opposition, Defendants dedicate significant briefing to attacking the merits of
    Plaintiff's claims, asserting that Plaintiff's Rule 60(b) motion should be denied because its
25  claims lack merit.  However, "[t]he merits of an action do not factor into the analysis the Ninth
    Circuit has adopted for Rule 60(b) motions." Lima v. Wachovia Mortg. Corp., 2010 WL
26  1223234, *3 (N.D. Cal. 2010) (Henderson, J.).  Moreover, Defendants' challenge to Plaintiff's
    claims is more properly brought through a noticed motion, whereby Plaintiff would be allowed
27  a twenty-five page opposition to Defendants' challenge, as opposed to only a fifteen page
    reply, as is presently the case.  See Civil Local Rule 7-3.  Therefore, the Court does not reach
28  the merits of Defendants' arguments in this regard.

IV.    **CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.    Plaintiff's Motion to Vacate Order of Dismissal and Reinstate Action is GRANTED.  The Court's Order dismissing this action (Dkt. 52) is hereby VACATED.  The Clerk shall reopen this file.

2.    A telephonic Case Management Conference is scheduled in this matter for **July 7, 2011 at 2:45p.m.**  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

3.    The April 5, 2011 hearing on Plaintiff's motion is VACATED.

4.    This Order terminates Docket 53.

IT IS SO ORDERED.

Dated: _3/31/11

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge